*Mejia Bonilla v. Garland*

BIA
Christensen, IJ
A088 035 332

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 23rd day of April, two thousand twenty-four.

PRESENT:
> DEBRA ANN LIVINGSTON,
> *Chief Judge,*
> ALISON J. NATHAN,
> SARAH A. L. MERRIAM,
> *Circuit Judges.*

_____

RUDY ALBERTO MEJIA BONILLA,
> *Petitioner,*

> v.                                                          21-6650
>                                                             NAC

MERRICK B. GARLAND, UNITED
STATES ATTORNEY GENERAL,
> *Respondent.*

_____

FOR PETITIONER:            Patrick Crowley, Esq., New York, NY.

**FOR RESPONDENT:** Brian Boynton, Principal Deputy Assistant Attorney General; Anthony P. Nicastro, Assistant Director; Kristen H. Blosser, Trial Attorney; Office of Immigration Litigation, United States Department of Justice, Washington, DC.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is DENIED.

Petitioner Rudy Alberto Mejia Bonilla ("Bonilla"), a native and citizen of Honduras, seeks review of a December 1, 2021, decision of the BIA affirming a February 28, 2019 decision of an Immigration Judge ("IJ") denying his application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Mejia Bonilla,* No. A 088 035 332 (B.I.A. Dec. 1, 2021), *aff'g* No. A 088 035 332 (Immig. Ct. N.Y. City Feb. 28, 2019). We assume the parties' familiarity with the underlying facts and procedural history.

We have reviewed the IJ's decision as modified by the BIA, reaching only the grounds for denying relief on which the BIA relied.[1] *See Xue Hong Yang v.*

---

[1] Bonilla does not contend that the BIA committed a constitutional or legal error by declining to address his changed circumstances as related to the timeliness of his asylum application. *See* 8 U.S.C. § 1252(a)(2)(D) (limiting our review of otherwise untimely asylum applications to "constitutional claims or questions of law"). He merely asserts that the agency "gave no real thought" to the timeliness issue and "chose to punt [it]." Petitioner Br. at 18. But, to the extent Bonilla asserts that the BIA committed

2

*U.S. Dep't of Just.*, 426 F.3d 520, 522 (2d Cir. 2005). We review the agency's legal conclusions *de novo*, *see Yi Long Yang v. Gonzales*, 478 F.3d 133, 141 (2d Cir. 2007), and its factual findings "under the substantial evidence standard, treating them as 'conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary,'" *Dong Zhong Zheng v. Mukasey*, 552 F.3d 277, 284 (2d Cir. 2008) (quoting 8 U.S.C. § 1252(b)(4)(B)); *see also Shu Wen Sun v. BIA*, 510 F.3d 377, 379 (2d Cir. 2007).

## I. Asylum and Withholding of Removal

To qualify for asylum and withholding of removal, Bonilla had to establish not only past persecution or a well-founded fear or possibility of future persecution, but that his "race, religion, nationality, membership in a particular social group, or political opinion was or will be at least one central reason for" the asserted persecution. 8 U.S.C. § 1158(b)(1)(B)(i); *see also id.* § 1231(b)(3)(A); *Quituizaca v. Garland*, 52 F.4th 103, 109–14 (2d Cir. 2022) (deferring to BIA's conclusion that the one central reason standard applies to withholding of

---

reviewable error, we disagree. The BIA was not required to consider the IJ's timeliness determination "because the agency's other grounds for the denial of relief were dispositive." *Salmeron v. Garland*, 860 F. App'x 198, 200 (2d Cir. 2021); *see also INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) ("As a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach.").

removal).

The agency concluded that Bonilla failed to demonstrate such a nexus—that his abusers, either the gang members or his uncle, were motivated by his membership in a particular social group or another protected ground. Bonilla does not challenge the nexus finding with respect to gangs and has thus abandoned any challenge to it. *See Debique v. Garland*, 58 F.4th 676, 684 (2d Cir. 2023); *Likai Gao v. Barr*, 968 F.3d 137, 144 n.7 (2d Cir. 2020) ("Challenges not argued by a party in his appellate brief . . . are deemed abandoned and need not be addressed by this court."). Thus, we need not review the agency's determination with respect to that issue.

As to the allegation that his uncle abused him, the agency reasonably concluded that this abuse was, tragically, opportunistic—*i.e.*, that the uncle targeted Bonilla because Bonilla was a child to whom he had access—rather than a crime motivated by Bonilla's membership in a family group. As the BIA noted, there was no evidence that the uncle abused other members of the family. And while Bonilla argues that his uncle expressed animus against family members by threatening to harm his mother, that threat was aimed at preventing Bonilla from revealing the abuse, rather than expressing animus toward members of Bonilla's

4

family. *Cf. Ucelo-Gomez v. Mukasey*, 509 F.3d 70, 73 (2d Cir. 2007) ("When the harm visited upon members of a group is attributable to the incentives presented to ordinary criminals rather than to persecution, the scales are tipped away from considering those people a 'particular social group' within the meaning of the INA."). Without evidence that Bonilla's uncle said or did anything else indicating animus, Bonilla failed to demonstrate that his shared family or kinship ties were a reason for (rather than a feature of) his uncle's perpetrated abuse. The agency's nexus determination, moreover, is dispositive of both Bonilla's asylum and withholding of removal claims. *See* 8 U.S.C. §§ 1158(b)(1)(B)(i), 1231(b)(3)(A); *see also Romero-Flores v. Barr*, 795 F. App'x 44, 46 (2d Cir. 2020).

## II. CAT

A CAT applicant has the burden to establish that he will "more likely than not" be tortured "by, or at the instigation of, or with the consent or acquiescence of, a public official acting in an official capacity or other person acting in an official capacity." 8 C.F.R. §§ 1208.16(c)(2), 1208.18(a)(1). A CAT claim requires a showing of a likelihood of torture "regardless of . . . past experiences." *Paul v. Gonzales*, 444 F.3d 148, 155 (2d Cir. 2006).

Bonilla does not challenge the agency's finding that, while the abuse he

5

experienced as a child constituted torture, it was not likely to be repeated. He argues instead that he suffers from "ongoing" psychological effects of his past abuse, and that this suffering would be exacerbated by his return to Honduras. But his concession that the psychological effects of his traumatic experience are "ongoing" in the United States undermines his claim that those effects will be triggered by his return to Honduras. More fundamentally, he does not explain how such suffering constitutes "torture" as defined by the rules implementing the Convention. Bonilla does not allege, for example, that his uncle's actions were attributable to the state. *See* 8 C.F.R. § 1208.18(a)(1) (defining torture to encompass severe mental suffering inflicted "by . . . a public official acting in an official capacity or other person acting in an official capacity").

Further, the agency reasonably concluded that Bonilla failed to establish that gang members are more likely than not to torture him. He testified that gang members attempted to recruit him between 2002 and 2003, threatened to harm him if he refused to join, and on the last of these occasions, threatened him with a gun and beat him to unconsciousness. He further testified that the police failed to act on his report, and that he feared that the gang remained interested in harming him because—although he had not returned to Honduras since fleeing in 2003—gang

6

members had inquired about him at his father's house and aunt's house in the three years prior to his 2019 hearing.

Bonilla argues that his fear of future harm (he refers to the likelihood of future "persecution" rather than torture) is not speculative given the severity of his past beating and threats and the gang's recent contact with his family. But this record does not compel the conclusion that torture is more likely than not to occur. *See Quintanilla-Mejia v. Garland*, 3 F.4th 569, 593–94 (2d Cir. 2021) ("[S]ubstantial evidence review does not contemplate any judicial reweighing of evidence. Rather, it requires us to ask only whether record evidence compelled . . . [a] finding different from that reached by the agency."). Bonilla conceded that the gang was likely no longer interested in recruiting him, he was aware of only two instances when the gang inquired about him in the approximately fifteen years after the beating, and he did not allege that the gang said anything threatening when it approached his family to inquire about him. On this record, the agency reasonably concluded that Bonilla's fear of gang torture was speculative. *See Jian Xing Huang v. U.S. INS*, 421 F.3d 125, 129 (2d Cir. 2005) ("In the absence of solid support in the record . . . [an applicant's] fear is speculative at best.").

For the foregoing reasons, the petition for review is DENIED.   All pending

motions and applications are DENIED and stays VACATED.

<div style="margin-left:40%">
FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court
</div>